Aguiar, J.
This appeal raises the issue of whether a trial judge erred in recommitting the defendant to the Bridgewater State Hospital in spite of the fact that two psychologists held the opinion that the defendant no longer required strict security.
We find no error.
This appeal further raises the issue of whether the trial court erred in taking evidence of facts which occurred prior to a Superior Court Order which stated “at the expiration of the current period of commitment the Department of Corrections shall petition to commit the petitioner to the Taunton Secure Unit of the Department of Mental Health, provided that the Department of Correction reserves the right to file a petition for the commitment of the petitioner to the Bridgewater State Hospital in the event that the petitioner clearly demonstrates through threatening or violent behavior that failure to hospitalize him in strict security would create a substantial likelihood of serious harm to himself or to others.”
We find no error.
The defendant was admitted to the Bridgewater State Hospital for the first time on July 4,1986 from Lawrence District Court pursuant to G.L.C. 123, §15 (b) after being charged with two counts of murder. On April 17,1988, he was found guilty of two counts of second-degree murder and sentenced to consecutive fifteen year to life terms at MCI-Cedar Junction. Despite his sentencing, the defendant remained at Bridgewater State Hospital pursuant to G.Lc. 123, §18.
On June 27, 1990, the Supreme Court, ordered a new trial on the defendant’s convictions, and following the new trial he was found not guilty by reason of insan *113 ity on June 26,1991. Since this final disposition of his criminal charges the defendant has been recommitted annually to Bridgewater State Hospital.
On March 15, 1995, the Brockton District Court entered an order of commitment for the defendant. He subsequently filed for an appeal in the Plymouth Superior Court pursuant to G.L.c. 123, §9(b). On December 1, 1995 the Plymouth Superior Court adopted an agreement between the parties. The agreement stated that when his commitment expired on March 14,1996, the Commonwealth would petition to commit the defendant to the Taunton Secure Unit of the Department of Mental Health “provided that the Department of Correction reserves the right to file a petition for the commitment of the Defendant to the Bridgewater State Hospital in the event that the Defendant clearly demonstrates through threatening or violent behavior that failure to hospitalize him in strict security would create a substantial likelihood of serious harm to himself or to others.”
On February 28,1996, the Commonwealth filed a petition for the recommitment of the defendant to the Bridgewater State Hospital which was allowed on March 28,1996 in the Brockton District Court.
The defendant contends that the trial judge was precluded from taking evidence of facts which occurred prior to Dec. 1, 1995 and that there was insufficient evidence beyond a reasonable doubt for recommitment to the Bridgewater State Hospital.
The Commonwealth presented only one witness, Dr. Paul Nestor, a Bridgewater State Hospital staff psychologist and his two exhibits, which consisted of his curriculum vita and his forty-two page report. This witness held the opinion that the defendant required strict security, because he was paranoid, had not changed since 1986, and has difficulty tolerating adjustment.
It is clear that the Commonwealth had the option to file for commitment if the defendant met the criteria for hospitalization in the strict security of Bridgewater State Hospital.
The defendant presented two witnesses, Dr. Andrew Moskowitz, also a Bridge-water State Hospital staff psychologist, who held the opinion that the defendant no longer required strict security and Dr. Richard Ober an independent psychologist who held the same opinion that the defendant should be transferred to a less restrictive facility. Dr. Moskowitz stated that the defendant had no previous psychiatric history, no basis of knowledge that he was ill when he offended, that he understands that he may require years of hospitalization, and is not preoccupied with the community. It was his opinion that the defendant’s current presentation is quite different from the presentation leading up to the crime, and that when the defendant was assaulted, in February 1996, he did not retaliate.
Dr. Richard Ober, testified that he had conducted a forensic evaluation of the defendant several times over the past years. It was his opinion that the defendant “is remarkably improved since his initial admission.” He stated that the defendant has been able to monitor his behavior, has no history of assaults, no recent history of suicidal ideation or attempts, is compliant generally with his medication and with treatment, and was able to control any impulses which he may have had when he was assaulted by another patient.
There was no direct testimony that the defendant had not assaulted another patient other than the defendant’s statement to the defendant’s witnesses.
There was substantial evidence in the medical record and history of the defendant that the defendant’s paranoia, anger, and lack of cooperation continue to the day of the hearing.
Defendant challenges Dr. Nestor’s testimony because he “did not conduct a forensic evaluation, had not made any observations of the patient’s interactions and had not interviewed the Defendant.”
In fact, Dr. Nestor supervised the preparation of a forensic evaluation in 1991 *114 and prepared his own 42 page evaluation which was entered into evidence in this hearing.
All three expert witnesses reviewed and utilized defendant’s entire medical record and history including facts prior to Dec. 1, 1995 in preparing their testimony and clearly the Superior Court order did not prohibit that practice. The staleness of the evidence may impact the evidence’s probative weight but not its admissibility.
Dr. Nestor testified that the defendant had murdered two adult women and that he “could find no clear evidence that the delusions that he had around the time of the crime are any different from the type of paranoia beliefs he harbors today.” He provided further evidence that the defendant would present a threat to other patients were he hospitalized in a Departmental of Mental Health facility.
In his written report Dr. Nestor stated his opinion that “it is hard to imagine the Defendant not becoming paranoid and directing his paranoia at specific and accessible targets, some of whom may be innocent, defenseless patients.”
Such evidence has been deemed sufficient for a trier of fact to find beyond a reasonable doubt that the defendant was dangerous by reason of mental illness. Commonwealth v. Rosenberg, 410 Mass. 347, 355 (1991).
There was no abuse of discretion by the trial judge in finding the facts she did.
The decision of the Brockton District Court is affirmed and the appeal is dismissed.